UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MOLLY K.,[1]

      Plaintiff,

                                    **Case No. 3:20-cv-00323**

      v.                            **Magistrate Judge Norah McCann King**

COMMISSIONER OF SOCIAL SECURITY,[2]

      Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Molly K. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties*, see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 10, *Defendant's Memorandum in Opposition*, ECF No. 13, *Plaintiff's Reply*, ECF No. 14, and the *Certified Administrative Record*, ECF No. 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants *Plaintiff's Statement of Errors*, reverses the Commissioner's decision and remands the action for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

I.      **PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income on March 29, 2017, and May 4, 2017, respectively, alleging that she has been disabled since December 23, 2015, based on a number of physical and mental impairments. R. 243-51, 252-58.[3] The applications were denied initially and upon reconsideration and Plaintiff requested a *de novo* hearing before an administrative law judge. R. 151-52. Administrative Law Judge ("ALJ") Gregory Kenyon held a hearing on April 4, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R.27-53. In a decision dated May 31, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 23, 2015, Plaintiff's alleged disability onset date, through the date of the decision. R. 11-21. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 18, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 16. The matter is ripe for disposition.

II.     **LEGAL STANDARD**

        A.      **Standard of Review**

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

---

[3] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

evidence, shall be conclusive . . . .”). The United States Supreme Court has explained the

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's]

determination, it is conclusive, even if substantial evidence also supports the opposite

conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v.

Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d

399, 406 (6th  Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that would have

supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not

be upheld where the SSA fails to follow its own regulations and where that error prejudices a

claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc.

Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d

742, 746 (6th Cir. 2007)).

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for

determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the

plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be

disabled if the impairment or combination of impairments has lasted or is expected to last for a

continuous period of at least twelve months.

## III.     ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 58 years old on her alleged disability onset date. R. 20. At step one, the

ALJ found that Plaintiff had not engaged in substantial gainful activity between December 23,

2015, her alleged disability onset date, and the date of the administrative decision. R. 13.

At step two, the ALJ found that Plaintiff's depression, an anxiety disorder, a personality

disorder, and post-traumatic stress disorder ("PTSD") were severe impairments, and that she had

no severe physical impairment. R. 14.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

impairments that met or medically equaled the severity of any Listing. *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work

subject to the following additional limitations:

> (1) limited to performing unskilled, simple, repetitive tasks; (2) occasional superficial
> contact with co-workers and supervisors (superficial contact is defined as retaining the
> ability to receive simple instructions, ask simple questions and receive performance
> appraisals but as lacking the ability to engage in more complex social interactions such as
> persuading other people or resolving interpersonal conflicts); (3) no public contact; (4) no
> fast paced production work or jobs which involve strict production quotas; and (5)
> limited to performing jobs which involve very little, if any, change in the job duties or the
> work routine from one day to the next.

R. 15. The ALJ also found that this RFC did not permit the performance of Plaintiff's past

relevant work as a gardener, nurse's aide, and dietary aide. R. 19.

At step five, the ALJ found that a significant number of jobs—*e.g.,* approximately 51,700

jobs as a lab equipment cleaner; approximately 88,000 jobs as a receiving checker; and

approximately 150,000 jobs as an industrial cleaner—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 20-21. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 23, 2015, her alleged disability onset date, through the date of the decision. R. 21.

Plaintiff disagrees with the ALJ's findings at step two of the sequential evaluation process. Specifically, Plaintiff argues that the ALJ erred in failing to find a severe physical impairment and erred in failing to consider Plaintiff's obesity. *Plaintiff's Statement of Errors,* ECF No. 10; *Plaintiff's Reply Brief*, ECF No. 14. Because the Court concludes that the matter must be remanded for consideration of Plaintiff's obesity, the Court will limit its discussion to that issue.

## IV.     RELEVANT EVIDENCE

Plaintiff testified at the administrative hearing that she was 5'1" tall and weighed 210 pounds. R. 32. She confirmed that her mental impairments were the primary issue at the hearing, and that they included depression and anxiety. R. 34. Plaintiff stated that she suffers from panic attacks, brought on when she's "in groups of people" or "if I'm nervous, or upset about something." R. 35. During her panic attacks, she experiences sweating, chest pains and pressure comparable to a heart attack. *Id*. She further testified that she tries to avoid interacting with people, but that she goes for daily walks and socializes with "a few" friends. R. 36. She also suffers from PTSD. R. 40.

Plaintiff's applications for benefits did not include obesity as a disabling condition. In addition to Plaintiff's testimony, however, the record includes ample evidence of obesity. For example, although the state agency reviewing physicians did not include obesity among Plaintiff's impairments—they found only severe mental impairments, *see* R. 69, 70, 84—the

record before the agency physicians reflected a BMI of 32 and 35.9. R. 62, 68, 77, 83, 84.

Moreover, the medical records are replete with references to Plaintiff's long-standing extreme

weight and BMI. For example, records from a November 2015 hospitalization contain the

notation, "Body Mass Index: (!) 39.81." R. 447 [sic]. In January 2017, Plaintiff's treating

internist noted a BMI of 36.72 and referred Plaintiff to weight management counseling. R. 525,

526, 531. *See also* R. 547, 556 (noting a BMI of 36.17 at a February 2017 office visit and

recommending weight loss), R. 576 (noting a BMI of 32.17 in May 2017), 578 (counseled on

diet and exercise in May 2017). More recent medical records continue to refer to Plaintiff's

weight and obesity. R. 920 (BMI of 41.4 and counseling on weight control in January 2018), 902

(BMI of 42.23 in February 2018), 930 (BMI of 42.32 in March 2018), 977-78 (BMI of 43.36 and

reference to obesity in July 2018), 986 (BMI of 43.16 in August 2018), 1009 (BMI of 42.97 in

November 2018), 1032 (the notation "no weight loss" in December 2018).

## V.      DISCUSSION

As noted above, the ALJ found that Plaintiff's severe impairments consist of depression,

an anxiety disorder, a personality disorder, and PTSD. R. 14. He made no mention of Plaintiff's

obesity. Although obesity no longer qualifies as a separate listed impairment, an ALJ must

nevertheless consider the effects of obesity when evaluating a disability claim. SSR 19-2P, 2019

WL 2374244 (May 20, 2019).[4] *See also Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435,

442-43 (6th Cir. 2010). "[O]besity, in combination with other impairments, 'may' increase the

severity of the other limitations." *Bledsoe v. Barnhart*, 165 Fed. Appx 408, 412 (6th Cir. 2006).

---

[4] SSR 19-2P became effective on May 20, 2019, and is therefore applicable to Plaintiff's claims, which were
pending on that date. See SSR 19-2P, *5 n.14.

In particular, obesity "increases the risk of developing impairments including . . . [m]ental impairments (for example, depression)…." SSR 19-2P, *3. Although the medical community defines obesity as a BMI of 30.0 or higher, *id*. at *2, "[n]o specific weight or BMI establishes obesity as a 'severe' or 'not severe' impairment." *Id.* at *4. Rather, the Commissioner will consider the claimant to have the medically determinable impairment of obesity "as long as his or her weight, measured waist size, or BMI shows a consistent pattern of obesity." *Id*. at *3. Obesity will be considered "severe" if the condition, "alone or in combination with another impairment(s), significantly limits [the claimant's] physical or mental ability to do basic work activities…." *Id.* at *3. If the claimant's obesity is severe, the ALJ must then "consider the limiting effects of obesity when assessing a person's RFC." *Id.* at *4.

Here, the evidence of record unquestionably "show[ed] a consistent pattern of obesity." *Id.* at *3. At a minimum, the ALJ erred in failing to determine, at step two of the sequential evaluation process, whether Plaintiff's obesity amounted to a medically determinable impairment and, if so, whether that impairment was severe. Under these circumstances, the Court concludes that the matter must be remanded to the Commissioner for further consideration of this issue.

## VI.    CONCLUSION

For these reasons, the Court **GRANTS** *Plaintiff's Statement of Errors,* ECF No. 10, **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  August 16, 20222022                              *s/Norah McCann King*
                                                                      NORAH McCANN KING
                                                                      UNITED STATES MAGISTRATE JUDGE